2006 VT 114

**In re M.T., Juvenile**

[912 A.2d 456]

No. 06-193

¶ 1. November 7, 2006. Mother appeals the family court's order terminating her parental rights with respect to her son, M.T. She argues that the court lacked personal jurisdiction over her because she was not served with a summons to appear at the termination hearing. We reverse the court's order and remand the matter because the court failed to directly notify mother, in addition to her attorney, of the scheduled termination hearing.

¶ 2. M.T. was born in June 1992 and placed in the custody of the Department for Children and Families (DCF) in May 2005 because mother had left him with an older brother unable to care for him. In June 2005, mother appeared at a merits hearing and stipulated that M.T. was a child in need of care or supervision (CHINS). In July 2005, at the conclusion of a hearing attended by mother's attorney, but not mother, the family court entered a disposition order placing M.T. in the custody of DCF. Mother did not request a hearing to contest the disposition order, nor did she appear at a later permanency review hearing. At a De-

cember 2005 status conference following DCF's filing of a petition to terminate mother's residual parental rights and responsibilities, mother's attorney advised the court "to just proceed with a hearing on the petition." The attorney stated that she would notify mother, but she doubted that mother would show up. She expressed her belief that "the State [would] present the quantum of evidence." The court stated that the "better course" would be to serve mother personally once a termination hearing was scheduled. Mother's attorney responded that she would send mother papers giving her an opportunity to voluntarily relinquish her parental rights and would personally serve mother regarding the termination hearing if mother did not agree to sign the papers.

¶ 3. One month later, at another status conference, mother's attorney indicated that she would be filing a motion to withdraw based on hostile communications from mother. Apparently, in response to receiving voluntary relinquishment papers from her attorney, mother left a belligerent message on the attorney's answering machine. The attorney reported to the court that mother had made it "clear that she will not under any circumstances voluntarily relinquish her parental rights." The court scheduled a later hearing to consider the attorney's motion to withdraw and, in the meantime, scheduled a two-hour termination hearing for March 16, 2006, after the State indicated that one hour would be sufficient. At a later hearing, the court denied the attorney's motion to withdraw, and the attorney informed the court that she sent mother notice of the hearing at the same New Hampshire address where she had sent other prior notices to mother. The court stated that it was troubled by mother not attending the hearing to express her apparent dissatisfaction with the attorney, but that, given what was at

stake, it would be better to have her represented by competent counsel.

¶ 4. At the termination hearing, DCF's attorney submitted into evidence two letters that the Department had sent to mother notifying her of the date and location of the termination hearing and requesting that she attend. The letters had been sent certified, return requested, and had been signed by mother. Two witnesses for the State testified at the hearing — a social worker and M.T.'s foster father. Following the hearing, the family court granted DCF's termination petition, finding that mother had abandoned M.T., had not complied with the disposition case plan, and would be unable to resume parental duties within a reasonable period of time. Regarding notice to mother, the court stated that mother had apparently been receiving notices of the various hearings from her attorney, and further that DCF had sent her two certified letters, return receipt, notifying her of the termination hearing.

¶ 5. On appeal, mother argues that the family court did not acquire personal jurisdiction over her because service of the termination petition was defective in that the court failed to direct the issuance of a summons for her appearance at the hearing, as required by statute. According to mother, a termination proceeding is separate and distinct from a CHINS proceeding, and thus the notice requirements of 33 V.S.A. §§ 5519-5520 — including that the court direct issuance of a summons — apply. To support this argument, mother relies primarily upon two sources: *In re B.C.*, 169 Vt. 1, 5, 726 A.2d 45, 49 (1999), and 33 V.S.A. § 5532(b).

¶ 6. In *B.C.*, a case construing the Uniform Child Custody Jurisdiction Act (UCCJA), we recognized that unless termination "is sought at the initial disposition hearing, a TPR petition commences a new proceeding to modify the previous disposition order based on

changed circumstances." 169 Vt. at 5, 726 A.2d at 49. We made it clear in that case, however, that a petition to modify a previous disposition order commences a new proceeding only "'[f]or purposes of the UCCJA.'" *Id.* (quoting *Matthews v. Riley*, 162 Vt. 401, 406 n.4, 649 A.2d 231, 236 n.4 (1994)). We concluded that, for purposes of determining which state has jurisdiction over a custody dispute, it makes sense in most instances* to consider the date of a motion to modify a previous custody or disposition order as the date of the commencement of the proceeding. See *id.* at 5-6, 726 A.2d at 49. Our decision in *B.C.*, however, does not stand for the proposition that a termination petition commences a proceeding that is completely distinct from the underlying CHINS proceeding, thereby requiring original process, including a summons. To the contrary, when a termination petition seeks modification of a previous disposition order in a pending CHINS case, the resulting termination proceeding is a continuation of the CHINS proceeding and not an independent proceeding requiring original process.

¶ 7. Mother argues, however, that a summons is required to commence a termination proceeding because 33 V.S.A. § 5532(b) provides that any order made in response to a petition to modify a previous order "shall be made after notice and hearing *as in the case of a*

---

* As noted in *In re B.C.*, 169 Vt. at 6 n.*, 726 A.2d at 49 n.*, we recognized in *Columb v. Columb*, 161 Vt. 103, 112 n.4, 633 A.2d 689, 694 n.4 (1993), "that the date of the filing of a motion to modify would not be considered the date of the commencement of the proceeding if another state had continuing jurisdiction under the [Parental Kidnapping Prevention Act]."

*[CHINS] petition filed under section 5516 of this title.*" (Emphasis added.) When a petition is filed under 33 V.S.A. § 5516, thereby commencing a CHINS proceeding, the family court is required to set a hearing no later than fifteen days following the filing of the petition and to "direct the issuance of a summons" to the parents or guardian, among others, "requiring them to appear before the court at the time fixed to answer the allegations of the petition." *Id.* § 5519(a). The statute expressly requires the summons to state that each party is entitled to counsel, *id.* § 5519(c), and further compels the court to "endorse upon the summons an order directing the parents, guardian, custodian, relative or person referred to [in § 5519(a)] to appear personally at the hearing." *Id.* § 5519(b). Any person who fails to appear as directed by a summons "may" be found in contempt, and a warrant for that person's appearance "may" issue. 33 V.S.A. § 5521(a)-(c). A hearing on a CHINS petition may not take place without the presence of, among others, "one or both of the parents, guardian or custodian of the child." *Id.* § 5521(d).

¶ 8. In mother's view, the clause in § 5532(b) requiring that orders in response to modification petitions "be made after notice and hearing as in the case of a [CHINS] petition" compels the court to follow every nuance of the original service of process procedure set forth in §§ 5516-5521 to commence a CHINS proceeding. Mother reads too much into the clause contained in § 5532(b). We do not read the quoted clause to mean that anytime a party moves to modify a previous order the court must go forward as if an entirely new proceeding was being commenced. This does not make sense, as demonstrated by the provisions themselves. For example, § 5519(b) requires the court to "endorse upon the summons an order directing the parents, guardian, custodian" — in other words, the legal

custodian — "to appear personally at the hearing." In the case of a termination petition, that would most often be DCF, not the parents. Further, § 5519(c) requires the summons to advise the parties that they are entitled to counsel, which generally would be unnecessary for a termination hearing because the parties have already obtained or been appointed counsel in the pending CHINS proceeding.

¶ 9. The bottom line is that a termination petition does not commence an entirely new proceeding because there is a CHINS proceeding pending, and therefore the original process demanding the appearance of the parents is not necessary. The "dominant concern" of the Legislature in promulgating the provisions concerning the commencement of a juvenile proceeding is "to place the children quickly in the safest and most suitable environment" while at the same time protecting all of the interests involved and obtaining a speedy resolution of the dispute. *In re R.S.*, 143 Vt. 565, 569, 469 A.2d 751, 754 (1983). When such a proceeding is commenced, it makes sense to require the issuance of a summons to apprise the parties of the nature of the action being commenced against them, to require their presence, and to give them an opportunity to obtain counsel and respond. See *Stewart-Brownstein v. Casey*, 728 A.2d 1130, 1132 (Conn. App. Ct. 1999) (stating that, in ordinary usage of term, summons is original process upon which action is commenced and named defendant is brought within jurisdiction of court). In this manner, the court system can quickly and efficiently protect the juveniles involved. On the other hand, once a CHINS proceeding has commenced, and the parties have been made aware of the proceeding and have either obtained, or had an opportunity to obtain, counsel, it is no longer necessary to issue original process, including a summons, requiring their presence and advising them to obtain counsel.

¶ 10. The question remains, however, if not a summons, what kind of notice does the statute require? Although we are not persuaded that a summons is necessary, we conclude that the statute requires, at a minimum, that the court provide direct notice to the parents of a scheduled termination hearing. Section 5532(b) requires "notice and hearing" as in the case of a CHINS petition, which, in turn, requires direct notice to the parents. We recognize that, contrary to the situation when the CHINS petition was filed, mother had assigned counsel at the time DCF filed its termination petition. Further, we have no doubt, after reviewing the record, that the court sent mother's attorney formal notice of the termination hearing, and that mother's attorney informed mother of the hearing. Finally, we acknowledge that our normal rules of service require only service upon the attorney of a party represented by counsel. See V.R.C.P. 5(b) ("Whenever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party is ordered by the court."); see also V.R.F.P. 2(a)(1) (stating that rules of civil procedure apply to CHINS proceedings, unless otherwise noted); cf. *Agency of Natural Res. v. Towns*, 168 Vt. 449, 453, 724 A.2d 1022, 1024 (1998) (holding that because notice communicated to attorney is presumed to be communicated to attorney's client, notice to attorney sufficient to trigger statute of limitations is imputed to client and will bar claim regardless of whether information was actually communicated to client).

¶ 11. Nevertheless, substantial compliance with § 5532(b) and §§ 5519-5520 requires, at minimum, direct notice from the court to the parents. See V.R.F.P. 2(a)(3) ("[V.R.C.P.] 4 shall apply subject

to 33 V.S.A. §§ 5519, 5520"). Moreover, the rationale underlying V.R.C.P. 5(b) does not address the concerns that are present with respect to a termination proceeding. The theory underlying Rule 5(b) is that service to the attorney "will expedite preparation of the case for prompt adjudication on the merits." 4B C. Wright & A. Miller, Federal Practice and Procedure § 1145, at 433-34 (3d ed. 2002). That may be true, but our concern, and apparently the concern of the Legislature, is that parents faced with the ominous prospect of permanently losing their children are entitled to direct notice from the court of a pending petition and scheduled hearing concerning the termination of their parental rights. The Legislature has vested with the family court the "awesome power" to sever familial relationships, see *In re J.M.*, 131 Vt. 604, 607, 313 A.2d 30, 31 (1973), but has also required the court to provide parents direct notice of a hearing in which it may exercise that power.

¶ 12. The case before us amply demonstrates the wisdom of such a policy. The principal proof of notice of the termination hearing was two letters sent by DCF, the party aligned against mother in this case, requesting her presence at the hearing. The court also sent notice of the hearing to mother's attorney, who presumably informed mother. The attorney, however, had filed a motion to withdraw because of mother's hostile reaction to receiving papers from the attorney regarding voluntary relinquishment of parental rights. After the family court denied the motion, the attorney advised the court to proceed with the termination hearing, while at the same time acknowledging that mother would most likely not appear for it. We cannot presume that mother recognized the full import of the proceeding without receiving direct notice of the termination hearing from the court empowered to take her child from her. Nor can we presume that notice from the opposing party or the attorney with whom she was feuding sufficiently conveyed the gravity of the situation. We conclude that § 5532(b) and §§ 5519-5520 require the family court to provide direct notice of a pending termination petition and hearing to the parents of children who are the subject of the petition, in addition to the parents' attorneys. Because that was not done in this instance, we must reverse the termination order and remand the matter for further proceedings.

*Reversed and remanded.*