2007 VT 32

**In re J.L., Juvenile**

[928 A.2d 474]

No. 06-388

¶ 1. April 25, 2007. Mother and father appeal termination of their parental rights. We affirm.

¶ 2. The following facts were established at the termination hearing. At the time of the hearing, mother and father had been in a relationship for approximately nine years. Father had provided mother with drugs throughout the course of their relationship. Mother and father had a child, J.L., who was born on August 8, 2004. J.L. is mother and father's third child. J.L. tested positive for drugs at the time she was born.

¶ 3. Mother and father lived separately at the time of J.L.'s birth. Shortly after J.L.'s birth, the Department for Children and Families (DCF) placed J.L. with her father due to mother's drug use. Mother was not to have any unsupervised contact with J.L. Unbeknownst to DCF, however, mother moved in with father after J.L. was placed in the home. Father and mother were using and selling drugs and not attending to the children's needs. In January 2005, police searched the residence pursuant to a warrant and found drugs in the home. The couple's three children were present in the home at the time of the police action, as were two of father's children from another relationship. Father was charged with and convicted of drug possession, conspiracy to receive stolen property, and simple assault, and was sentenced to serve two-to-ten years. His earliest possible release date is July 2007.

¶ 4. After the drugs were found in father's home, J.L. and her siblings were found to be children in need of care and supervision (CHINS), and placed into DCF custody. The DCF disposition report set reunification as a goal but established a three-to-six-month time frame for mother and father to make "consistent and significant progress" on multiple issues including addressing their drug use and the domestic violence between them, as well as establishing a safe and

stable home for the children. J.L. was placed with a foster family, where she remained at the time of the August 2006 termination hearing.

¶ 5. Following the two-day hearing, the family court terminated both parents' residual parental rights. The court found that while mother had improved her parenting skills to some extent between September 2005 and September 2006, this improvement came too late to salvage mother's relationship with J.L., who was twenty-four months old at the time of the termination hearing and had been with her foster parents for eighteen of those ·months. The family court concluded that there were changed circumstances due to the stagnation of mother's parenting skills. The court opined that mother would have to have been ready to parent J.L. by ·"mid-2005" to preserve any chance of forming a positive relationship with J.L.; instead mother was homeless, jobless, and using drugs at that time. ·Regarding father, the court noted that he had engaged in minimal services related to drug use and parenting skills, and, in any case,·would be incarcerated until mid-2007 — too long for J.L. to wait to have a stable placement. In concluding that termination was in J.L.'s best interests, the family court noted that she had thrived on many levels in the care of her foster parents.

¶ 6. Mother and father raise separate arguments on appeal. In reviewing the family court's decision, "[o]ur role is not to second-guess the family court or to reweigh the evidence, but rather to determine whether the court abused its discretion" in terminating parental rights. *In re S.B.*, 174 Vt. 427, 429, 800 A.2d 476, 479 (2002) (mem.). Furthermore, we may affirm a decision of a trial court on any legal basis supported by the record, even if it was not the theory relied on by the trial court. See *Larkin v.*

*City of Burlington*, 172 Vt. 566, 568, 772 A.2d 553, 556 (2001) (mem.).

¶ 7. To support a decision to terminate parental rights, the family court must first conclude that there has been a substantial and material change in circumstances permitting modification of the goal of reunification. *In re A.G.*, 2004 VT 125, ¶ 17, 178 Vt. 7, 868 A.2d 692 (citing 33 V.S.A. § 5532; further citation omitted). A substantial and material change can be shown "when a parent's ability to care for a child has either deteriorated or stagnated" over time. *Id.* ¶ 19 (citation omitted). The court must then conclude that termination "serves the child's best interests under the criteria of [33 V.S.A.] § 5540." *Id.* ¶ 17.

¶ 8. Regarding the threshold finding of changed circumstances, mother argues that the· evidence did not support the family court's conclusion that her parenting skills had stagnated. Specifically, she argues it was error for the family court to require mother to be ready to parent J.L. by "mid-2005" when DCF's case plan gave mother until September 2005 to demonstrate her improved ability to parent. In support of the family court's decision, the State emphasizes that the termination hearing was held in August 2006 — seventeen months after the disposition report was issued — and while the court found that mother's life had improved in the last year, after she served a brief incarcerative sentence for drug possession, the court also found that mother's improved life skills came too late to benefit J.L. Accordingly, whether mother had shown a particular level of improvement as of mid-2005 was not of great importance in August 2006 when the termination hearing was held. As of that date, the court concluded that J.L. "does not see [m]other as a supportive, parental figure [and] she would not miss [m]other's presence in her life if visits with her were to end" because mother

had never been able to meet J.L.'s needs during her young life. Thus, the court's decision was premised on the evidence that mother had no existing parent-child relationship with J.L., and had not progressed sufficiently toward developing one. This was properly considered to be changed circumstances.

¶ 9. Mother also claims that the family court failed to make a finding regarding 33 V.S.A. § 5540(3) — that mother would be unable to resume parenting J.L. in a reasonable period of time — and argues that the family court erred in exclusively looking at J.L.'s relationship with her foster family to determine whether termination was in J.L.'s best interests. While the family court's findings on this issue were dispersed throughout the opinion, the court clearly found and considered that mother had not made sufficient progress in the prior seventeen months to support the conclusion that she would be able to parent J.L. in a reasonable period of time. The ultimate assessment that mother would not be able to resume parenting J.L. in a reasonable period of time is further supported by the fact that the "reasonableness" of the time period must be judged from the perspective of J.L. — a rapidly developing two year old who had been in foster care since she was six months old. *In re B.M.*, 165 Vt. 331, 337, 682 A.2d 477, 480 (1996) ("reasonable period of time" must be viewed from perspective of child's needs). Further, while the conclusion of the opinion did address J.L.'s relationship with her foster family, the opinion as a whole encompassed all the factors required to be considered under 33 V.S.A. § 5540.

¶ 10. Father argues that his due process rights were violated because the family court did not provide him with direct notice of the termination hearing, as required by our decision in *In re M.T.*, 2006 VT 114, ¶ 10, 180 Vt. 643, 912 A.2d 456 (mem.). The family court mailed notice to the last address provided by father, but the notice was returned. Apparently father failed to notify the court of his change of address, although he had properly notified the court of an address change at least once previously in the same case. The court then sent the notice to father's attorney. Father, who was incarcerated in Kentucky at the time, was told — apparently by his attorney — to call into the court on the morning of the termination hearing, and father did so. But after father was put on hold while the court and attorneys discussed procedural matters, father hung up. Father's attorney objected to going forward without father being physically present, but made no objection to the notification process. On the second day of hearing, father's attorney unsuccessfully tried to reach father in the Kentucky prison. He objected to the hearing going forward without his client present, but again made no claim that insufficient notice of the proceedings had been provided to father. At the close of the evidence, father's counsel asked that the record be kept open for seven days so that his client would have the opportunity to present evidence. The court granted the request. No party presented any further evidence, and on August 24, 2006, the court granted the termination of both parents' residual parental rights. In the order, the court found that, although father was given an opportunity to participate in the termination hearing by phone, he "chose not to do so."

¶ 11. The State responds that *M.T.* does not require actual notice or an assurance that the parent fully appreciates the gravity of the termination proceedings. In addition, the State asserts that fault lies with father for not keeping a current address on file with the family court.

¶ 12. In *M.T.*, the mother claimed that the family court had not acquired personal jurisdiction over her because service of the termination petition was defective. She asserted that a termination proceeding was a petition to modify a previous order and thus, pursuant to 33 V.S.A. § 5532, notice and hearing were required as for a petition filed under § 5516. When a petition is filed under § 5516, thereby commencing a CHINS proceeding, the family court is required to "direct the issuance of a summons" to the parents or guardian, among others, "requiring them to appear before the court at the time fixed to answer the allegations of the petition." *Id.* § 5519(a). This Court held that the statutes do not require the court to provide notice as if an entirely new proceeding had commenced any time a party moves to modify a prior order. *M.T.*, 2006 VT 114, ¶ 9. Rather, the Court held that there must be direct notice from the court, as opposed to the parent's attorney or DCF, to the parents of a scheduled termination hearing. *Id.* ¶¶ 8, 11. Thus, even though the mother in *M.T.* had received actual notice from DCF — she returned receipts for certified mailings — this was not considered adequate. The Court opined "[w]e cannot presume that mother recognized the full import of the proceeding without receiving direct notice of the termination hearing from the court empowered to take her child from her." *Id.* ¶ 12.

¶ 13. Here, the family court did send notification directly to father of the termination hearing. It was his failure to update the court as to his change of address that resulted in the failure of the notice to reach him. It is clear that father was aware of his obligation to keep a current address on file and knew how to update his address with the court because he had done so previously in this same proceeding. Upon return of the notice to the court, it was sent to father's attorney. Thus, he did subsequently receive the notice from his attorney. Further, unlike the situation in *M.T.*, here, father initially participated in the termination hearing. That he hung up the phone, for whatever reason, and thus ended his participation, should not deprive the court of jurisdiction over him to go forward and determine the fate of the child in this case. The court did what we required in *M.T.*, and we find no error.

¶ 14. Even if there were error in the process of providing notice to father, the family court subsequently left the record open for an additional seven days at the request of father's counsel. This provided ample opportunity for father to either supplement the record, request an additional opportunity to participate, or explain what happened when he hung up the phone during the prior proceeding. But no such steps were taken.

¶ 15. Finally, father argues that the evidence does not support the court's finding that he lacked parenting skills. The court found that, at the time the child was placed in foster care, father was using and selling drugs and that he and mother were not attending to the child's emotional and physical needs. The court found that, although DCF expected him to complete domestic-assault treatment services in 2005, he had failed to do so before being incarcerated. Further, the court found he "made no effort to improve his parenting skills" and had had no contact with J.L. since his incarceration, concluding "[h]is ability to care for J.L. has stagnated." Father claims that the evidence of current drug abuse was lacking and that there was "no evidence of drug use having an adverse impact on his parenting ability."

¶ 16. Father does not dispute he will not be eligible for release until July 2007 at the very earliest, almost a full year after the termination hearings. Given the

child's young age and father's lack of a relationship with her, his lengthy incarceration alone supports the court's ruling terminating his parental rights. See *In re K.F.*, 2004 VT 40, ¶ 12, 176 Vt. 636, 852 A.2d 584 (mem.) (affirming termination of parental rights where father had been unavailable due to repeated incarceration, had not played a constructive role in child's life, and there was no likelihood of reunion in foreseeable future). This was, in fact, the basis for the family court's conclusion that father could not resume parenting in a reasonable period of time. Further, the fact that J.L was removed from father's home because father was in possession of illegal drugs and selling same at a time when the child was present argues against him having basic parenting skills.

*Affirmed.*