2008 VT 38

### In re S.W., L.F., T.B., K.F. & K.F., Juveniles

[949 A.2d 442]

No. 07-345

---

*Corsones*, J.

¶ 1. March 14, 2008. Mother appeals the family court's order terminating her parental rights with respect to her five children. Father appeals the same order with respect to his child with mother, S.W. Upon review of the record, we conclude that the evidence supports the family court's findings, which, in turn, support the court's conclusions and termination order. Accordingly, we affirm.

¶ 2. Mother was the primary care giver for the children, who were born between May 1994 and September 2000. Mother has a history of physical and mental health problems, and has spent considerable time hospitalized or incarcerated. Before moving to Vermont in the early fall of 2004, mother and the children resided in Pittsfield, Massachusetts with, at dif-

ferent times, the children's maternal grandmother, one of their maternal aunts, or father and his children. In October 2004, not long after mother and the children moved to Vermont, the Department for Children and Families (DCF) filed petitions alleging that the children were without proper care and supervision (CHINS). The Department tried to help mother obtain suitable housing and enroll the children in school, but she did not cooperate. In late November 2004, the family court placed the children in state custody, where they have remained ever since. Mother attended a December 2004 hearing, but shortly thereafter returned to Massachusetts, where she was hospitalized and later incarcerated.

¶ 3. The children were adjudicated CHINS in early 2005 based on mother's admissions of neglect. The case plan goal at the time was to return the children to mother. Father had not been conclusively identified as the father of one of the children until the fall of 2006, and was never considered a placement option because of his lengthy and repeated incarceration. The family court issued a disposition order in April 2005 continuing custody with DCF, adopting the goal of reunification with mother, and ordering DCF to make an active effort to coordinate with Massachusetts, where mother was living at the time, on the possibility of transferring the children to that state for placement.

¶ 4. In the late fall of 2005, DCF changed its case plan goal to adoption and filed a petition to terminate parental rights with respect to all five children. The termination hearing was held over seven days between March and June 2007. Mother attended all but the last day of the hearing. Following the hearing, the family court concluded by clear and convincing evidence that there had been a substantial change of circumstances and that the children's best interests dictated that mother's and father's parental rights

be terminated. Both mother and father appeal that order. Mother argues that: (1) DCF failed to make reasonable efforts to comply with the family court's disposition order requiring the Department to look into the possibility of placing the children in Massachusetts; (2) the family court's denial of her second counsel's repeated attempts to withdraw deprived her of effective assistance of counsel; and (3) the court failed to give her direct notice of the last day of the termination hearing. For his part, father argues that the court's conclusion that he would not be able to provide parental care within a reasonable period of time was not supported by essential findings. We reject each of these arguments, which we address in turn.

¶ 5. Mother first argues that DCF failed to use reasonable efforts to comply with the family court's disposition order requiring the Department to actively seek placement of the children in Massachusetts. We conclude that the record supports the family court's determination that DCF made reasonable efforts in that regard. In its disposition order, the family court expressed concern that the children were in separate placements and that DCF appeared to believe that the children's family should be principally responsible for seeking placement of the children in Massachusetts. The court stated that the children needed to be together as much as possible and that placement in Massachusetts near their extended family was in their best interest. The court emphasized, however, that it did not mean to imply that mother and her extended family had no obligation to pursue placement in Massachusetts. The court indicated that the family needed to make the necessary contacts with the appropriate Massachusetts agency and to express their desire to care for the children and to follow the case plan. In the end, the court ordered DCF to make an "active effort" to coordinate with Massachusetts on the possibility of placing the

children in Massachusetts, even if not a kinship placement.

¶ 6. Following the termination proceedings in which a different judge presided, the family court considered whether DCF had made reasonable efforts to comply with the disposition order. The court found that DCF followed through "completely" with respect to that order by pursuing both foster and kinship placements in Massachusetts. As the court found and mother acknowledges, the Massachusetts agency informed DCF that it would not consider a placement with mother's extended family, given their history with the agency, and that it was unable to locate a foster home for the children in the Pittsfield area, given the number of the children and their extensive needs. The court noted that the Massachusetts agency closed its interstate case on the children in July 2005, meaning that the children would have to stay in Vermont as long as they remained in state custody. These unchallenged findings support the court's conclusion that DCF fulfilled its obligations under the disposition order by making reasonable efforts to establish a Massachusetts placement.

¶ 7. Next, mother argues that she was entitled to, but denied, effective assistance of counsel when the family court refused to allow her second attorney to withdraw. Because mother has failed: (1) to make any showing that her counsel was ineffective or that she was prejudiced by any ineffectiveness on his part, or (2) to demonstrate that the family court abused its discretion by denying her second attorney's motion to withdraw, we need not determine whether, or under what circumstances, a party may claim ineffective assistance of counsel in a termination proceeding. See *In re A.D.T.*, 174 Vt. 369, 374-75, 817 A.2d 20, 25 (2002) (declining "to decide whether, and under what circumstances, a parent may raise an ineffective-assistance-of-counsel claim in a termination proceeding").

¶ 8. Approximately four months after DCF filed its termination petition, the family court allowed mother's first counsel to withdraw from the case. Two months later, her second counsel filed a motion to withdraw, citing a lack of communication. The court denied the motion, finding that the problem appeared to be mother's unavailability, which could continue irrespective of whether it assigned new counsel. The attorney continued to represent mother at hearings, but told the court that he was not getting clear instructions from his client. Several months later, following completion of the first three days of the termination hearing, mother's attorney again moved to withdraw, stating that he had not communicated productively with mother and that there was a breakdown in client trust. The attorney indicated that he was unsure whether mother wanted him to withdraw, but that he wanted to withdraw because he did not think that he should have to deal with the animosity that mother had directed toward him at times. In response, mother stated that she just needed to sit down with her attorney and be clear about how they want to proceed to get her kids back. After listening to mother and her attorney, the court denied the motion. The court acknowledged that this is a difficult and emotional case, and that the attorney-client relationship had gone through some difficult patches because of mother's emotional duress. Nevertheless, the court concluded that this was not a case in which the client had consistently berated the attorney to the point where he could not fulfill his duty to advocate zealously on her behalf.

¶ 9. On appeal, mother fails to demonstrate, or even argue, that the court abused its discretion in so ruling. See *State v. Stanley*, 2007 VT 64, ¶ 12, 182 Vt. 565, 933 A.2d 184 (mem.) (noting that a decision whether to grant a motion to substitute counsel is left to the trial court's sound discretion); *State v. Ahearn*,

137 Vt. 253, 262-63, 403 A.2d 696, 703 (1979) (noting that an indigent defendant has no right to counsel of his choice, and that the trial court has discretion to substitute new counsel upon consideration of the relevant factors). Moreover, other than citing the family court's denial of her attorney's motion to withdraw, mother makes no showing either that her counsel was ineffective or that any ineffectiveness on his part was prejudicial in that it affected the outcome of the proceeding. Cf. *In re M.B.*, 162 Vt. 229, 236-37, 647 A.2d 1001, 1004 (1994) (noting that father failed to specify how his trial counsel's presumed ineffectiveness prejudiced his case sufficiently to create a reasonable probability of a different outcome).

¶ 10. Mother's final argument is that *In re M.T.*, 2006 VT 114, 180 Vt. 643, 912 A.2d 456 (mem.), mandates reversal because the family court failed to notify her directly of the last day of the termination hearing, which she did not attend. We find no error. In *M.T.*, 2006 VT 114, ¶ 12, although DCF had sent the mother letters notifying her of a termination hearing and the court had directly notified the mother's attorney of the hearing, we reversed and remanded the termination decision, holding that the family court was required "to provide direct notice of a pending termination petition and hearing to the parents of children who are the subject of the petition, in addition to the parents' attorneys." We refused to presume (1) that the mother would necessarily recognize the full import of the proceeding without the court itself directly sending her notice, or (2) that notice from the attorney with whom she was feuding would sufficiently convey the gravity of the situation. *Id.*

¶ 11. In this case, after receiving notice directly from the court, mother attended the first six days of the termination hearing. She did not attend the last day of the hearing, which had been continued, but the court directly notified her and her attorney of that hearing date. When mother failed to appear on the final day of the hearing, the family court called as a witness the court clerk, who testified that she had sent two notices of the hearing date to mother at mother's last known address, and that neither letter had been returned as undeliverable. The clerk testified that she had attempted to call mother, but that the phone had been temporarily disconnected, so she sent a letter by overnight mail informing mother of the hearing and providing her with information concerning arrangements that had been made for mother's transportation to Vermont and lodging here. Based on this testimony, the court found that it had provided mother with direct notice of the hearing, as required by *M.T.* The court stated that it would give mother an opportunity to reopen the final day of the proceeding if she could later demonstrate that she was incarcerated or hospitalized and unable to attend the hearing or notify the court of her predicament.

¶ 12. On appeal, mother argues because there was no proof that she actually received direct notice from the court of the last day of the termination hearing the court's termination decision must be reversed. We disagree. The evidence supported the court's findings that it had sent direct notice of the hearing to mother at her last known address and that the notice had not been returned as undeliverable. Our holding in *M.T.* requires nothing more.

¶ 13. For his part, father argues that because the family court did not make findings on DCF's failure to explore his recommended kinship placement with his sister, and erroneously found that his sister declined to assume care over S.W., its termination decision with respect to him cannot stand. According to father, DCF's inaction impaired his ability to provide S.W. with proper care through his sister or mother. We find no merit to this argument. The issues in this termination

proceeding were whether there had been a substantial change of circumstances and, if so, whether the best interests of the children warranted termination of parental rights. With respect to father, the court noted that since S.W. had come into state custody, father had been arrested, convicted, and incarcerated for felony drug distribution — his twentieth arrest in the previous fifteen years. The court also found that father had not seen S.W. for a few years before she was placed in state custody, and that his visits with her since then had been brief. Noting that father had spent seven of the previous ten years in jail, the court concluded that he had not played a constructive role in his daughter's life. The record supports these unchallenged findings and conclusions. In considering DCF's termination petition with respect to father, the court was not required to make findings on the potential parental fitness of his sister or mother. In short, father's derivative-fitness argument is unavailing.

*Affirmed.*