*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-217

NOVEMBER TERM, 2016

| | |
|---|---|
| In re A.E., Juvenile } | APPEALED FROM: |
| } | |
| } | Superior Court, Orleans Unit, |
| } | Family Division |
| } | |
| } | DOCKET NO. 47-10-14 Osjv |

Trial Judge: Robert R. Bent

In the above-entitled cause, the Clerk will enter:

Mother and father appeal termination of their parental rights to their daughter A.E., born in October 2014. On appeal, both parents raise issues concerning maternal grandmother's desire to have A.E. placed with her. Mother argues that the family court abused its discretion by failing to consider transferring legal custody of A.E. to the maternal grandmother. Father argues that the court violated his Due Process rights by failing to properly apply the Interstate Compact on the Placement of Children (ICPC) and in excluding consideration of the maternal grandmother as a placement. We affirm.

Mother and father were married and residing together at the time of A.E.'s birth. Within days after A.E. was born, the Department for Children and Families (DCF) filed a petition alleging that A.E. was a child in need of care or supervision (CHINS) due to mother's drug use and significant degree of emotional dysfunction. An emergency care order was issued, and A.E. was placed in DCF custody. In January 2015, parents stipulated that A.E. was CHINS for lack of proper parental care. In March 2015, the court issued a disposition order transferring custody to DCF and adopting concurrent goals of reunification and adoption. In July 2015, DCF moved to terminate parental rights.

A termination hearing was held in April, 2016. The court made oral findings on the record, as follows. Mother continued to use nonprescribed drugs at the time of the termination hearing and continued to have emotional dysfunction. By August 2015, parents had stopped visiting A.E. A.E. remained in the same foster home where she had lived since she was five days old. She was well adjusted to her foster home and bonded to her foster parents. The court found that there was no likelihood that parents could resume parenting within a reasonable period of time and that parents did not play a constructive role in the child's life.

To terminate parental rights following disposition, the court must find "a substantial change in material circumstances" and also that "termination of parental rights is in the child's best interests." In re R.B., 2015 VT 100, ¶ 31. In assessing the child's best interests, the court must

consider the statutory criteria. 33 V.S.A. § 5114. The most important factor is whether the parent will be able to resume parenting duties within a reasonable period of time. In re J.B., 167 Vt. 637, 639 (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. Id.

In this appeal, neither parent challenges the court's findings or its determination that there was a change of circumstances.[1] Instead, the parents' arguments focus on facts related to A.E.'s maternal grandmother, who lives in Massachusetts. Initially, mother moved to deny her mother visits with A.E. The court denied that motion in February 2015. In March 2015, at the grandmother's initiation, DCF sent Massachusetts a request pursuant to the ICPC, 33 V.S.A. §§ 5901-5910, regarding the possibility of placing A.E. with her grandmother.[2] In April 2015, the grandmother moved for party status. The court denied the motion. In June 2015, Massachusetts returned the request, denying the placement. The letter from Massachusetts Child and Family Services indicated that grandmother and her partner each had "extensive criminal backgrounds as well as DCF histories" and there was an open arrest warrant for the grandmother's partner. Massachusetts explained that the grandmother's home did not meet eligibility standards.

Neither parents nor the grandmother made any further motion to the court to have the grandmother included as a party or considered as a placement until the contested termination-of-parental-rights hearing, at which time the grandmother moved for party status. The court again denied the motion for party status, explaining that grandmother should have raised the issue earlier and that the issue at the termination hearing was "about the parents and their fitness to be parents." At the termination hearing, grandmother's attorney testified and stated that the information Massachusetts used as a basis for its denial was inaccurate. She explained that she had attempted to correct the information and received advice from parents' DCF caseworker that to do this she had to obtain approval from the Massachusetts agency, but that DCF failed to advise her that she could resubmit the application based on the errors in the information relied upon by the Massachusetts agency. She admitted, however, that she did not contact the Vermont ICPC office to find out information about the process. In its oral findings, the court explained that the grandmother's efforts to intervene at the termination hearing came too late in the process, that the court could not place the child with grandmother without ICPC approval, and moreover, that grandmother did not have a significant relationship with the child and it would not be in the child's best interest to remove A.E. from her foster home.

---

[1] The court made oral findings in this case. Although the court did not state explicitly that there was a change of circumstances due to parents' lack of progress, the court's findings—that mother continued to use illegal drugs and to have emotional dysregulation, and that parents had stopped visiting in August 2015—certainly support a finding that stagnation occurred.

[2] The ICPC is a state law governing placement of children in other states. Sending states are required to comply with the ICPC prior to sending children for placement, and a child may not be sent "until the appropriate public authorities in the receiving state [] notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interest of the child." 33 V.S.A. § 5903(a), (d).

2

On appeal, father contends that the court's application of the ICPC interfered with his right to parent and denied him due process because the court's action resulted in his child being placed with a nonrelative. We conclude there was no denial of due process to father. The state has a legitimate interest in the safety and welfare of children and therefore has a right to separate a neglectful parent from a child. See In re R.B., 152 Vt. 415, 426 (1989) ("The State's power to intervene to protect a child, and if necessary to terminate the parent-child relationship, does not deny the parent substantive due process."). Any error in application of the ICPC would not change the basis upon which the State acted to remove A.E. from father's care, which included parents' stipulation that A.E. was CHINS for lack of proper parental care. Further, the court complied fully with the process due to father in evaluating the child's best interests, and the unchallenged findings support the court's conclusion that termination was in the child's best interests.

Father also raises issues concerning the manner in which DCF conducted the ICPC process. Father argues that DCF delayed sending the ICPC request to Massachusetts and provided incomplete advice to grandmother about how to correct or challenge the Massachusetts denial. These issues are not relevant to the question of whether termination of parents' rights was in A.E.'s best interests.[3] The possible placement with grandmother, the possibility of an appeal from the ICPC process, and the quality of the information DCF provided to grandmother have no bearing on the court's termination decision.[4] This Court has explained on several occasions that the sole issues at a post-disposition termination are "whether there had been a substantial change of circumstances and, if so, whether the best interests of the children warranted termination of parental rights." In re S.W., 2008 VT 38, ¶ 13, 183 Vt. 610 (mem.); see In re D.S., 2014 VT 38, ¶ 31, 196 Vt. 325 (explaining that termination of parental rights "is not dependent on the children's placement options" and rejecting father's argument that court should have considered placement or custody of juvenile with grandmother as alternative to termination). Placement of the juvenile is not relevant to this determination and certainly not a defense to termination of parental rights.

Mother's argument is similarly without merit. She argues that regardless of the ICPC determination, the court could have placed A.E. with grandmother at disposition, relying on 33 V.S.A. § 5318(a)(7), which allows the court at disposition to transfer "legal custody to a relative or another person with a significant relationship with the child." Even if the court had authority to place A.E. with grandmother without an ICPC approval pursuant to § 5318, mother lacks standing to raise this issue in response to the termination decision. Questions regarding placement have "no bearing on whether the court erred in terminating parents' rights." In re R.B., 2015 VT 100, ¶ 19. Here, the family court found by clear and convincing evidence that parents could not

_____

[3] On appeal, the State moves to strike portions of father's printed case that the State alleges contains documents that were not part of the record below. The motion is granted. Our decision on the motion does not affect this decision.

[4] We also reject father's argument that the failure to place A.E. with grandmother violated the federal preference in the Adoption and Safe Families Act (ASFA) that requires that states "shall consider giving preference to an adult relative over a non-related caregiver." 42 U.S.C. § 671(a)(19). The language expresses a preference and is not a requirement that children be placed with a relative. In any event, any failure to comply with the ASFA does not amount to a defense to the termination petition.

resume parenting within a reasonable period of time, that they did not play a constructive role in A.E.'s life, and that A.E. was well adjusted to her foster home and family. These unchallenged findings support the court's conclusion that termination of parental rights was in A.E.'s best interests.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice