VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      23-AP-295



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

FEBRUARY TERM,   2024

| | |
|---|---|
| In re A.T. & E. T., Juveniles<br>(S.M., Mother\* & A.T., Father\*) | APPEALED FROM:<br><br>Superior Court, Addison Unit,<br>Family Division<br>CASE NOS. 20-JV-00216 & 20-JV-00215<br>Trial Judge: Robert Katims |

In the above-entitled cause, the Clerk will enter:

Mother and father appeal from the termination of their residual parental rights in E.T. and A.T., born in April 2015 and April 2016 respectively.  We remand as to mother for resolution of a factual dispute regarding notice; we affirm the termination of father's rights.

The trial court made the following findings.  E.T. and A.T. were placed in the emergency custody of the Department for Children and Families (DCF) in September 2020 following an allegation of child abuse.  E.T. had rug burns on her body that were inconsistent with accidental injury.  Parents denied abusing E.T.; father was subsequently convicted of cruelty to a child. Prior to this event, DCF received twenty reports expressing concern about the family.  Mother has substance-abuse issues and significant mental-health issues; father has significant substance-abuse issues.  The parties stipulated that the children were in need of care or supervision (CHINS) in October 2020.  In March 2022, the State moved to terminate parents' residual rights. Parents attended the first day of the termination hearing but not the second day.  In a September 2023 decision, the court found that parents stagnated in their ability to parent and that termination of their rights was in the children's best interests.

The court found that when the children first entered DCF custody, they were not toilet trained, they lacked dental care, they appeared disheveled, and they were struggling developmentally.  The children were placed in a foster home.  Their foster mother provided them with a stable environment and the children thrived in her care.  Both children identified a need for consistency and predictability and stated that they did not feel safe with parents.

DCF attempted a brief trial reunification with parents in December 2022.  The reunification failed due in part to reports that the children were acting out inappropriately and aggressively at school.  Service providers also reported that parents were overwhelmed and that

the children's home environment was becoming progressively unsafe. Parents confided to the children's foster parent that things were not going well. Things stabilized once the children returned to their foster home.

Following the failed reunification, parents continued to struggle in their ability to parent. As indicated above, mother has significant mental-health issues, including anxiety, agitation, and combativeness. She also had sleep problems and was observed falling asleep during visits with the children. Mother could not see beyond her own needs and she often failed to connect with the children during visits. Shortly before the termination hearing, mother relapsed and abused substances. Father continued to struggle with substance-abuse issues. He started but did not complete residential treatment in April 2023, and he resumed using cocaine as evidenced by positive drug screens. Father did not understand how his substance abuse negatively affected the children; he believed it only affected him.

The court concluded that parents' capacity to care properly for the children had, if anything, deteriorated since the initial case plan in December 2020. Despite a brief change in a positive direction in late 2021, parents failed to adequately address their areas of need. Mother was unable or refused to address her mental-health issues. Father continued to abuse substances. Both failed to complete parenting classes. Both were consistently late or missed visits with the children, often with little or no notice, which generated mistrust in the children. Despite substantial services being provided to parents during the trial reunification in late 2021, parents became quickly overwhelmed and unable to properly parent the children. Given this, the court concluded that there had been a change circumstances since the initial disposition order. Turning to the statutory best-interest factors, the court found no likelihood that parents could resume parental duties within a reasonable time, and it concluded that the remaining factors also supported termination of parents' rights. Mother and father appealed.

## I. Mother's Appeal

Mother argues on appeal that the State failed to prove that she was served with notice of the termination hearing as required by Vermont Rule for Family Proceedings 3. Mother did not raise this argument below and claims plain error. In support of her argument, she points to statements made by the trial court on the second day of the termination hearing when she and father failed to appear. The court expressed its belief that it had an incorrect address for mother on file and later stated that notice had not been sent to parents. The State appeared to suggest in response that service on parents' attorneys sufficed, which mother argues is incorrect. Mother contends that she was deprived of her right to attend the final hearing day, which constitutes plain error.

Mother attended the first scheduled hearing day in these termination proceedings. That hearing took place in May 2023 and addressed solely whether the children qualified as "Indian" under the Indian Child Welfare Act. At the outset of the second day of the termination hearing, which occurred in August 2023, the State noted parents' absence. It informed the court that, in terms of notice, it was relying on the court's records, indicating that notice would have been sent to the addresses that parents provided to the court. The State added that it also had evidence from a DCF employee and an Easter Seals worker that parents had been verbally informed of the hearing, and the State expected parents' attorneys would agree that they had sent their clients notice of the hearing. The court indicated that, according to its records, notice of the hearing had been sent and it listed the addresses that the court had on file for each parent. The State

responded that parents were now living together at father's address. The court clerk indicated that notice was sent to all parties. The court agreed that notice had been sent to all parties but questioned if mother's address was correct. The hearing then began. Not long thereafter, the court stated that it "just g[ot] information that the notice was sent to the parents' attorneys, but not directly to the parents. So I don't know if that changes anything, but . . . ." The basis for the court's assertion is unknown. The State responded that it did not believe that changed anything and expressed her belief that parents' "attorneys would indicate that they ha[d] noticed their— their clients."

The rules require that notice of the termination hearing "be served by the court directly upon the parents by first-class mail in accordance with Rule 5(b)(2) of the Vermont Rules of Civil Procedure unless otherwise ordered." V.R.F.P. 3(a)(3)(A); see also In re M.T. 2006 VT 114, ¶ 11, 180 Vt. 643 (mem.) (holding that court must send parents "direct notice . . . of a pending petition and scheduled hearing concerning the termination of their parental rights"). Under Vermont Rule of Civil Procedure 5(b)(1)(C), "[s]ervice by mail or by commercial carrier is complete upon mailing or delivery to the carrier." See also Reporter's Notes—2006 Amendment, V.R.C.P. 5 (similarly explaining that each method of service provided for in Rule 5(b) "is complete upon entrustment of the paper being served to the means of transmission—the postal service or carrier, or the 'send' button of the electronic device"). We have held that the court's notice obligation is satisfied when the court mails notice to a parent's last known address, even if it is returned due to the parent's failure to update his or her address. See In re J.L., 2007 VT 32, ¶ 13, 181 Vt. 615 (mem.) (holding that it was parent's "failure to update the court as to his change of address that resulted in the failure of the notice to reach him").

As indicated above, mother appeared at the first day of the termination hearing in May 2023, which presumably allowed her to "recognize[] the full import of the proceeding." See In re M.T., 2006 VT 114, ¶ 12 (stating that receiving direct notice of termination hearing from court, which is empowered to terminate rights, allows court to presume that parent "recognized the full import of the proceeding"). With respect to the second day of the termination hearing, which was held in August 2023, the trial court record shows that parents were each mailed notice of the termination hearing by first-class mail. The court clerk so indicated at the hearing as did the trial court initially. Mother's address is listed in the court file. These facts appear to satisfy the court's notice obligation.

The trial court then stated, however, that it had learned that notice was sent only to counsel. It did not indicate the source of that information, which is at odds with the records available to this Court. We cannot resolve this factual dispute on appeal and we must therefore remand the court's decision as to mother for additional findings concerning the notice sent to mother. As indicated above, if the court finds that notice of the hearing was sent by first-class mail to the address it had for mother on file, that would discharge its notice obligation. No additional proceedings would be required. If mother did not receive the notice because she moved, any service failure would be mother's responsibility for failure to update her address with the court. See In re J.L., 2007 VT 32, ¶ 13. We emphasize the narrow scope of our remand: the court need only make a finding on whether notice was sent to mother by first-class mail at the address that she had provided to the court. If such notice was sent, no additional proceedings are required and the termination of mother's rights will stand as mother raised no challenge to the merits of that order on appeal. If notice was not sent by first-class mail, mother would be entitled to a new hearing. Our limited remand does not encompass any notice

3

argument as to father. Father challenged only the merits of the court's decision and he waived any notice argument by failing to raise it in this appeal.

## II. Father's Appeal

We thus turn to father's arguments. Father first asserts that parents did not deny abusing E.T. and the court erred in so finding. Father states that he accepted responsibility for causing E.T.'s injury in stipulating that the children were CHINS. Father also contends that the court erred in finding that reports from the children's school were part of the reason that DCF deemed the trial reunification with parents a failure. He argues that the trial reunification occurred over the winter holiday period, while the children were not regularly attending school.

To determine the best interests of a child, the court must consider four statutory factors. See 33 V.S.A. § 5114. The most important factor is the likelihood that the parent will be able to resume his or her parental duties within a reasonable time. See In re B.M., 165 Vt. 331, 336 (1996). As long as the court applied the proper standard, we will not disturb its findings on appeal unless they are clearly erroneous; we will affirm its conclusions if they are supported by the findings. In re G.S., 153 Vt. 651, 652 (1990) (mem.).

Father fails to show that the findings he identifies were clearly erroneous. With respect to the first finding, the court was describing the circumstances under which the children entered DCF custody. It stated that "[r]ug burns were discovered on [E.T.'s] body inconsistent with an accidental injury. Both parents denied any abusive behavior, although [father] eventually was convicted of cruelty to a child." A DCF employee testified to the circumstances that brought the children into DCF custody, including parents' response to law enforcement following the incident. She testified that parents told police that they accidentally dropped E.T., which was inconsistent with the rug burns on her back and torso. Mother also minimized the incident, which caused law enforcement concern. This testimony supports the court's finding. Even if this finding was erroneous, any error would be harmless. See In re B.S., 163 Vt. 445, 454 (1995) (recognizing that party must establish prejudice from alleged errors to warrant reversal); see also In re D.F., 2018 VT 132, ¶ 46, 209 Vt. 272 (concluding that reversal not warranted where challenged finding was "not central to the court's decision"). The court's decision did not turn on father's abuse of E.T. but rather on his failure to make any meaningful progress during the pendency of these proceedings.

The court's finding regarding the trial reunification is also supported by the record. There was testimony that the trial reunification began around the holiday break and, when the children returned to school in January, their schools reported serious behavioral issues and significant concern that "both children had severely decompensated with . . . their reunification."

Father next argues that the court erred in concluding that termination of his rights was in the children's best interests. He argues that the court should have weighed the evidence differently. He states that he loves the children and notes that they are not in a preadoptive home. Father maintains that parents should be given more time to improve.

We reject these arguments, which are inconsistent with our standard of review. It is the exclusive role of the trial court to assess the credibility of witnesses and weigh the evidence. In re A.F., 160 Vt. 175, 178 (1993). We do not reweigh the evidence on appeal. See In re S.B., 174 Vt. 427, 429 (2002) (mem.) ("Our role is not to second-guess the family court or to reweigh the evidence, but rather to determine whether the court abused its discretion in

4

terminating . . . parental rights . . . .”).  The court's findings support its conclusions, including its conclusion that father cannot parent the children within a reasonable time, and we find no error.

The court's termination order is affirmed as to both parents.  The matter is remanded for an evidentiary hearing and separate determination of whether there are grounds to vacate the order as to mother based on whether the court mailed notice of the hearing to mother by first-class mail to the address she provided.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Karen R. Carroll, Associate Justice


_____
William D. Cohen, Associate Justice