VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      25-AP-154

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

OCTOBER TERM,   2025

| | |
|---|---|
| In re K.L. and M.L., Juveniles | } APPEALED FROM: |
| (K.L., Father\* and B.M., Mother\*) | } |
| | } Superior Court, Caledonia Unit, |
| | } Family Division |
| | } CASE NO. 23-JV-00331; 23-JV-00332 |
| | Trial Judge: Bonnie J. Badgewick |

In the above-entitled cause, the Clerk will enter:

Mother and father appeal a family division order terminating their parental rights to their children K.L. and M.L., born in June 2014 and June 2019, respectively.  On appeal, parents argue that the evidence does not support the court's finding that there was a change of circumstances due to stagnation or the court's analysis of the best-interests factors.  They also contend that the family division improperly weighed parents' circumstances against those of foster parents.  We affirm.

The record provides the following facts.  In January 2023, K.L. and M.L. were living with mother, who had primary custody.[1]  Father filed a request for a relief-from-abuse (RFA) order on behalf of the children after father was stabbed by mother's boyfriend at mother's home.  The family division granted the RFA order and placed the children in father's custody.  At the time, father was residing with his parents and the children joined him there.  In March 2023, the Department for Children and Families (DCF) filed a petition alleging that K.L. and M.L. were children in need of care or supervision (CHINS) due to a history of substance abuse.  A supporting affidavit from the DCF Family Services Worker (FSW) averred that mother and her boyfriend were reported to be using Percocet, methadone, and crack cocaine with the children nearby.  It also noted that father had tested positive for cocaine and that a medical examination showed that both children had systemic exposure to crack cocaine and that M.L. had ingested cocaine.  The court granted an emergency care order and transferred custody to DCF.

---

[1]  Mother claims that the court erred in indicating that mother had custody at the time the CHINS petition was filed because the RFA order transferred custody to father.  We need not resolve this factual question because mother fails to demonstrate how any error impacted the outcome of the court's decision.  Both parents stipulated to the merits of the CHINS petition, the case plan contemplated reunification with either parent, and the court's decision addressed both parents.

In July 2023, the court found K.L. and M.L. were CHINS due to lack of proper parental care based on the parties' stipulation that at the time the petition was filed the children were at risk of harm due to exposure to substance use at mother's home. The resulting disposition case plan contemplated reunification with either parent and had goals for both parents. Mother's goals included participating in Family Time coaching to demonstrate an ability to supervise the children appropriately, prioritizing the children's needs by participating in meetings and appointments, attending parent-child contact, engaging in a substance-addiction evaluation and following any recommendations, remaining sober, undergoing supervised drug screening, obtaining safe and sanitary housing, maintaining a source of income, and engaging with DCF. Father had the same goals and additionally was required to consult with a domestic-violence specialist and follow any resulting recommendations.

Over a year later, in October 2024, the State filed petitions to terminate parents' rights based on parents' lack of progress. Following a hearing, the court made the following findings.[2] Mother's attendance at visits was inconsistent. As a result, she did not complete Family Time coaching and did not have an opportunity to develop a connection with the children or learn how to meet their needs. Her lack of attendance also had an emotional impact on the children. As to substance use, although mother completed a substance-use assessment and was discharged from a residential program in 2024, she did not follow through on action steps. Mother did not participate in outpatient services and continued to be in contact with people engaging in substance use and unsafe behavior. Mother did not establish safe and stable housing. Mother also did not engage with economic services to ensure a stable source of income.

Father had contact with the children early in the case but voluntarily stopped contact in November 2023. He admitted that he was actively using substances and made the decision to stay away from the children until he "got clean." He also did not engage with DCF to obtain services. Father's lack of contact and lack of engagement with DCF had a significant impact on his ability to meet the expectations in the case plan. Because he did not attend visits, he did not complete Family Time coaching or develop relationships with the children. Given the long period of no contact, going forward father required a lot of work to establish a relationship with the children. Despite the long period without contact, shortly before the final hearing, father attended K.L.'s basketball game and this caused K.L. distress after not seeing her father for so long. Although father knew of K.L.'s distress, father attended a second game. As to substance use, father had only just begun his recovery. He had recently engaged a substance-abuse counselor, but he was in the early stages of remission and required continued work to maintain

---

[2] The family court structured its findings around the goals in the case plan, considering whether mother and father met each enumerated goal. As mother notes, the case plan is not a checklist and "the main concern must always be whether the individual parent has demonstrated the improvement contemplated at the time the children were removed from the parent's care." See In re D.M., 2004 VT 41, ¶ 7, 176 Vt. 639 (mem.). As explained more fully below, despite the structure of its analysis, the evidence supports the court's findings that parents had not demonstrated an improvement "in ameliorating the conditions that led to state intervention." Id.

The family court's findings also contain some recitation of witnesses' testimony or opinion without a clear indication of whether the court credited those facts or opinions. This Court has observed in the past that "recitation of testimony is not the equivalent of a finding of the facts contained in that testimony." In re E.C., 2010 VT 50, ¶ 14, 188 Vt. 546 (mem.) (citing Krupp v. Krupp, 126 Vt. 511, 514 (1967)). Nonetheless, there are sufficient findings here to support the court's decision.

sobriety. Although father had housing, it was not a place that the children identified as safe and secure. Father also did not follow through on the action steps related to domestic violence.

The children were initially placed with their maternal grandparents. Due to safety concerns, DCF moved them to a different foster home in September 2023, where they have remained. The foster mother knew the children previously from school and was considered "fictive kin." The foster parents love and support the children, and the children have a good relationship with their foster sister. The children are engaged in afterschool activities. They have a routine at home and stability.

Based on the findings, the court determined that there was a change of circumstances due to parents' lack of progress. In the two years the children were in custody, neither parent had progressed to the point of demonstrating an ability to care for the children overnight or on a consistent basis. Father had not visited with the children since November 2023, lacked a meaningful relationship with them, and just begun his recovery from substance abuse. Mother's visits were inconsistent and caused the children sadness. Mother did not demonstrate sobriety. The court considered the statutory factors and determined that termination was in the children's best interests. The children were well adjusted to their foster family where they had structure and routine. They were doing well in school and relied on foster parents for emotional, physical, and mental support. Parents did not have the ability to resume parenting within a reasonable time given the children's time in custody and need for stability. Finally, parents did not play a constructive role in the children's lives and prioritized their own needs over the children. Both parents appeal.

When the State moves to terminate parental rights after the initial disposition, the court must first find that there is a change of circumstances, 33 V.S.A. § 5113(b), and second, "that termination of parental rights is in the child's best interests." In re K.F., 2004 VT 40, ¶ 8, 176 Vt. 636 (mem.). In assessing the child's best interests, the court must consider the statutory criteria. 33 V.S.A. § 5114. The most important factor is whether the parent will be able to resume parenting duties within a reasonable time. In re J.B., 167 Vt. 637, 639, (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. Id.

Both parties raise arguments related to the court's findings. Mother[3] argues that evidence in the record is either indiscernible or insufficient to support the court's findings. Mother contends that the testimonies of the DCF FSW and the foster mother were not fully transcribed, and the transcript contains many "indiscernible" references, indicating that the transcriber was unable to discern the words from the audio recording. Mother claims that the record is inadequate to support the court's decision. As appellants, it was parents' responsibility to order the transcript for the appeal, and if mother deemed the transcript incomplete or required correction, it was her burden to move to modify or correct the record prior to briefing. V.R.A.P. 10(b), (e) (explaining that appellant responsible for ordering transcript of "proceedings relevant to the issues raised" and allowing parties to correct record); see In re S.B.L., 150 Vt. 294, 298 (1988) (declining to reverse where transcript unavailable but appellant did not seek to order available transcripts or correct record pursuant to appellate rules). Having failed to seek such modification or clarification, mother waives the right to raise any issue for which the corrected transcript is necessary. V.R.A.P. 10(b)(1).

---

[3] Father has indicated that he joins the arguments made in mother's brief.

Father contends that the evidence does not support the court's decision that termination was in the children's best interests, alleging that termination was unnecessary because father had attained sobriety, and the children's biological grandparents were willing to care for them. Father misconstrues the standard. After an initial disposition order, at termination, the sole questions for the court are whether there was a change of circumstances and, if so, whether termination of parental rights is in the children's best interests. In re S.W., 2008 VT 38, ¶ 13, 183 Vt. 610 (mem.). The family division is not "required to make findings on the potential parental fitness" of a parent's relatives. Id. Therefore, whether the children could be placed with grandparents was not the issue at termination. Moreover, contrary to parents' assertion, the court did not terminate their rights because it would take too much "work" to unify the family. The court properly focused on an assessment of the children's best-interests. The court acknowledged that father had made progress towards sobriety, but found he would not be able to resume parenting within a reasonable time given that his recovery was just beginning, he lacked the skills to resume parenting, and he had not established a relationship with the children.[4] See In re J.J., 143 Vt. 1, 6 (1983) (explaining that "while parental improvement is a factor to consider, the real test is whether there is a reasonable possibility of reuniting parent and child within a reasonable period of time"). The court's assessment supports its conclusion that father would not be able to resume parenting within a reasonable time.

There is no merit to mother's assertion that father properly absented himself from the children's lives while working on his sobriety because otherwise he would have been penalized by DCF for being around the children while using and this was a "no-win" situation for him. As the family court found, father's choice to stop engaging in the case plan and having contact with the children was a factor totally within his control. DCF was prepared to provide him with services, but father chose to absent himself from the process and prioritize his own needs over those of the children. This absence had an impact on his relationship with the children and ability to parent them.

Parents both contend that the court's analysis of the best-interests factors was flawed because the court engaged in an inappropriate comparison between parents and foster parents as evidenced by the fact that after its analysis of each factor, the court indicated that the factor "favored" the foster parents. This Court has long held that a termination proceeding is not a process of "weighing which parent or guardian will be best able to serve the needs of the child," In re S.B., 174 Vt. 427, 428 (2002) (mem.), and parents' rights cannot be terminated solely because a child may be better off somewhere else. The family court erred by indicating that the factors favored foster parents, but the court's inartful language does not amount to reversible error. See In re I.B., 2016 VT 70, ¶ 12, 202 Vt. 311 (explaining that "trial court need not express its findings concerning the child's best interests in the precise language of the statute so long as it

---

[4] The record does not support parents' claim that the court's analysis was flawed because father's sole issue was his substance use, which he addressed. Parents stipulated to the merits of the CHINS petition and the resulting case plan identified several areas for father to focus on in addition to substance use, including parenting skills, accountability, and domestic violence. At no time did father challenge the inclusion of these areas in the case plan or allege that the goals related to these areas were unsupported. Having failed to challenge the initial disposition order approving that case plan, father is foreclosed from now alleging that it contained improper goals. See In re C.B., 2020 VT 80, ¶ 38, 213 Vt. 215 (providing that after initial disposition was final and not appealed, it could not be collaterally challenged in appeal from subsequent disposition order).

is evident from the court's decision that the relevant factors were considered" (quotation omitted)). The substance of the court's analysis indicates that the court properly considered the merits of each factor in light of the children's best interests and did not terminate parents' rights based on a comparison of the circumstances of foster parents versus parents. Most importantly, the court found that neither parent could resume parenting within a reasonable time, as measured from the needs of the children. After almost two years of the children being in custody, mother had not maintained sobriety or followed up with outpatient services. She had inconsistent contact with the children and did not have a safe place for them to live, continuing to associate with unsafe individuals. Likewise, father made progress towards sobriety but had not had contact with the children and required work to repair that relationship.

Finally, mother argues that the court improperly weighed the children's preferences and that the evidence of such preferences was based on hearsay. In its termination decision, the court recounted that the children did not believe father's home was a safe place and that K.L. felt the trust between the grandparents and her was broken after father attended her basketball game. At trial, father objected to these statements for lack of personal knowledge. The children's foster mother testified that she observed K.L. was upset after the basketball game, that K.L. expressed her feelings directly to foster mother, and that it took a while for K.L. to get back into her routine. Given that foster mother's statements about K.L. were based on her personal knowledge, mother has not demonstrated how hearsay was improperly used. In any event, hearsay is admissible at termination as long as it is not the sole basis for termination. In re A.F., 160 Vt. 175, 181 (1993); see 33 V.S.A. § 5317(b). As recounted in detail above, the court's decision was supported by direct evidence here.

Affirmed.

BY THE COURT:

 

_____
Paul L. Reiber, Chief Justice


_____
Harold E. Eaton, Jr., Associate Justice


_____
William D. Cohen, Associate Justice