2014 VT 76

# In re B.A., Juvenile

[101 A.3d 168]

No. 13-343

Present: Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.

Opinion Filed July 18, 2014

*Michael Rose*, St. Albans, for Appellant.

*Kerry A. McDonald-Cady*, Windham County Deputy State's Attorney, Brattleboro, for Appellee.

¶ 1. **Reiber, C.J.** Mother appeals the family court's adjudication of her daughter B.A. as a child in need of care or supervision (CHINS). She argues that the court erred in combining the merits of the CHINS proceeding with the disposition of a concurrent delinquency proceeding. Mother contends that the court lacked statutory authority to combine the hearings and that striking the CHINS adjudication is necessary to cure the error. We affirm.

¶ 2. The facts supporting the CHINS adjudication as found by the trial court are as follows. B.A. was born in June 1999. In the fall of 2012, B.A. was referred to a specialized educational program due to sporadic school attendance and safety issues raised by school personnel regarding suspected use of regulated substances. From the beginning of her attendance, school person-nel noticed difficulties with B.A.'s hygiene, including dirty, torn clothing and unkempt hair. School staff also noticed scars from self-injury.

¶ 3. In December 2012, police investigated a report that B.A.'s brother had been sexually assaulted by a friend of B.A. The assault allegedly was witnessed by B.A. and took place in mother's home when mother was present in another room. When the investigating detective interviewed B.A. and her brother, mother was argumentative and uncooperative. She would not allow police access to her home to look for relevant evidence. Police obtained a search warrant, and observed that the residence was "extremely cluttered and dirty." There were stacks of items over five-feet high, food items and dirty dishes on counters, and the

floor was sagging in a hazardous manner. The Department for Children and Families (DCF) sought an emergency care order based on the condition of the home, but it was denied due to lack of proof that the home was the children's regular residence.

¶ 4. In January 2013, B.A. arrived at school intoxicated and with fresh cuts on her arm. B.A. admitted she had been drinking all night and had continued drinking on the bus to school. School staff members were extremely concerned and contacted mother. Although the school director explained to mother that she viewed the situation as urgent and believed B.A. required immediate mental-health intervention, mother maintained that she was unable to reschedule her own medical appointment to come immediately.

¶ 5. Two days later, the court granted DCF's request for an emergency care order. The State subsequently filed two petitions: one alleging that B.A. committed a delinquent act by consuming alcohol, and the other alleging that B.A. was CHINS for lack of proper parental care. Following a temporary care hearing, the court granted DCF custody of B.A., and DCF placed her in a foster home.

¶ 6. The delinquency and child-neglect petitions proceeded simultaneously. In March 2013, B.A. admitted the delinquent act, and in April 2013, DCF recommended a disposition of juvenile probation and continued DCF custody. Mother opposed the CHINS petition and the recommendation of continued DCF custody in the delinquency disposition plan. The court combined the two issues for a contested hearing. Prior to the hearing, mother made a voluntary waiver of her right to be represented by counsel.

¶ 7. The court held a merits hearing over two days in July 2013. At the hearing, the State presented testimony from B.A.'s school director and principal, her DCF caseworker, the state police detective who had gone to B.A.'s home in December 2012 to investigate the sexual assault, and the troopers who executed the emergency care order.

¶ 8. Mother testified on her own behalf, and presented testimony from her friend, her son, and her mother. Mother claimed that she did not bear any responsibility for B.A.'s difficulties. She stated that B.A. was washed and dressed appropriately for school each day. She also testified that B.A. was not intoxicated when she left home that January morning, and that she was unable to come immediately to assist B.A. because she needed to get

medication refilled. She stated further that B.A.'s instability was due to the fact that the boy who had allegedly sexually assaulted B.A.'s brother was riding the same bus and going to the same school as B.A.

¶ 9. In a written order, the court found that B.A. was CHINS for lack of proper parental care. The court found that B.A.'s "state of intoxication and disarray" when she arrived at school on that January morning demonstrated a lack of proper parental care alone sufficient to support a CHINS finding. The court did not credit mother's explanation that B.A. had not been intoxicated when she left the house. In addition, the court found that parental neglect was further demonstrated by the living conditions in mother's house, which were unclean and unsafe, as well as the harmful outbursts of rage that mother exhibited in front of B.A.

¶ 10. On the disposition recommendation, the court approved the case plan of continued DCF custody in the delinquency docket.[*] The court found that B.A. had changed dramatically since being removed from her mother's custody, and her "appearance, hygiene, attitude, composure, study habits, relations to peers and teachers" had all improved.

¶ 11. On appeal, mother does not challenge any of the court's evidentiary findings. Instead, she argues that juvenile-protection proceedings mandate a particular statutory procedure and the court's failure in this case to precisely adhere to that procedure caused reversible error. The statutory procedures for both juvenile-delinquency and child-neglect proceedings follow a similar path. In both cases, the State initiates the case by filing a petition alleging the factual basis. See 33 V.S.A. §§ 5222 (setting forth required contents of delinquency petition), 5310 (delineating requirements for petition alleging child is CHINS). Once the court finds that the child is delinquent or CHINS, a disposition plan is prepared. See id. §§ 5230 (requiring disposition case plan in delinquency to include, among other things, assessment of child's needs, any proposed probation conditions and permanency goal if child is in DCF custody), 5316 (describing necessary contents of disposition case plan in CHINS cases, including permanency goal, assessment of child's needs and recommendation for custody). The merits hearings, if contested, are subject to the Vermont Rules of

---

[*] At the end of its decision, the court approved the same disposition report and case plan in the CHINS docket.

Evidence. *Id.* §§ 5229(d), 5315(d). At the disposition hearing, hearsay may be admitted and relied on if probative. *Id.* §§ 5231(b), 5317(b).

¶ 12. ■ Thus, both types of cases employ a bifurcated procedure, separating the merits from the disposition phase. See *In re D.D.*, 2013 VT 79, ¶ 20, 194 Vt. 508, 82 A.3d 1143 (describing bifurcated nature of abuse-and-neglect proceedings). The statute envisions that in some cases, "with the agreement of the parties," the court can proceed directly from the merits to disposition based on an initial case plan. 33 V.S.A. §§ 5229(h), 5315(h).

¶ 13. Mother contends that here the court lacked statutory authority to simultaneously take evidence on both the merits of the CHINS petition and the delinquency disposition plan. Assuming, without deciding, that the court's procedure failed to comply with the terms of the statute, we conclude the error is not grounds for reversal because mother failed to preserve the issue and combining the hearings did not cause prejudice.

¶ 14. Mother did not object to combining the two hearings before the family court. At a status conference on April 19, 2013, the court suggested combining the merits of the CHINS petition with the hearing on disposition in the delinquency docket since mother opposed the recommendation for continued DCF custody. The court acknowledged that it would be "tricky" because different evidentiary rules applied in the two proceedings, but indicated that the issue and the witnesses were the same, and a joint hearing would serve judicial economy. The court directed that the State would have to go forward in the joint hearing "without resort to the relaxed rules of evidence, which otherwise it would be entitled to . . . in the disposition hearing." See V.R.C.P. 42(a) (allowing joint hearings or trials of matters involving common questions of law or fact); V.R.F.P. 2 (incorporating V.R.C.P. 42 into CHINS proceedings). The State agreed to the procedure, and mother made no objection to the proposal at that time or at any subsequent point in the proceedings before the family court.

¶ 15. ■ Generally, in juvenile proceedings, as for other civil cases, unpreserved issues that are not raised at trial are waived on appeal. See *In re A.W.*, 2014 VT 32, ¶ 28, 196 Vt. 228, 94 A.3d 1161 (declining to address parents' argument that court improperly relied on evidence regarding events occurring after CHINS petition was filed where no objection was raised at trial); *In re*

*C.H.*, 170 Vt. 603, 604, 749 A.2d 20, 22 (2000) (mem.) (concluding father's argument waived where it was not raised in family court proceedings); *In re D.C.*, 157 Vt. 659, 660, 613 A.2d 191, 191 (1991) (mem.) (explaining that issues not presented to trial court for consideration are waived on appeal). Nonetheless, this Court can consider unpreserved errors in "exceptional cases" where the error is "so obvious, grave, and serious as to warrant reversal." *In re D.C.*, 157 Vt. at 660, 613 A.2d at 192 (citing *Varnum v. Varnum*, 155 Vt. 376, 382-83, 586 A.2d 1107, 1110-11 (1990) (explaining that unpreserved constitutional claim in child custody case would be reviewed under only a very limited standard of review)).

¶ 16. ▮ Here, the unpreserved error mother claims does not amount to a "fundamental miscarriage of justice" warranting reversal. *Varnum*, 155 Vt. at 383, 586 A.2d at 1111. Mother contends that by combining the procedures the merits determination was tainted by the admission of irrelevant and inadmissible evidence. However, the only irrelevant evidence mother identifies is testimony that mother introduced concerning whether the school or DCF were aware that the boy who had allegedly abused B.A.'s brother was riding the school bus with her. This was evidence introduced to support mother's theory that B.A.'s appearance and behavior were caused by riding the bus with the alleged abuser. Therefore, to the extent it was improperly admitted, it would have supported mother's case, not caused prejudice.

¶ 17. ▮ Mother also claims that the State was allowed to present inadmissible hearsay testimony when a DCF case worker testified regarding a substance-abuse evaluation of B.A. Mother fails to explain how admission of this evidence, even if improper in the context of the CHINS determination, mandates reversal. When evidence is improperly admitted in a CHINS determination, the decision is reversible only when the "findings independent of the challenged evidence do not support a conclusion that the child is without proper parental care." *In re R.M.*, 150 Vt. 59, 66, 549 A.2d 1050, 1055 (1988) (quotation omitted). Here, the court's findings supporting the CHINS adjudication are independent of the evidence challenged by mother. Properly admitted evidence supports the court's findings that B.A. was in mother's care when she frequently came to school unwashed and unkempt, with marks of self-injury and, on one occasion, intoxicated and in a vulnerable emotional state. These findings alone support the court's conclu-

sion that mother failed to provide B.A. with proper parental care, and, therefore, there are no grounds for reversing the CHINS adjudication.

¶ 18. Mother also contends that the disposition proceeding was deprived of relevant evidence because the court did not admit hearsay evidence proffered by mother. Mother posits that there may have been reports that would have been helpful in determining the best interests of the child and, because they were hearsay, the court did not have the benefit of the information. Mother also points to the fact that she was denied the opportunity to introduce school records on hearsay grounds to demonstrate that they contained no notation regarding B.A.'s poor hygiene.

¶ 19. ■ ■ At disposition in a delinquency proceeding, the court must make provision for the child's supervision and protection, and is authorized to transfer custody of the child to the Commissioner of DCF. 33 V.S.A. § 5232. Disposition decisions are discretionary, and this Court requires the family court to use its "[b]est judgment, rather than perfection," as the guiding standard. *In re J.D.*, 165 Vt. 440, 444-45, 685 A.2d 1095, 1099 (1996). Mother fails to demonstrate any reversible error. Although mother claims that the court would have benefited from admission of hearsay reports, mother does not identify any such reports, or explain what those reports would have shown. Further, mother fails to show how admission of the school records would have changed the result. The court's findings concerning B.A.'s appearance at school were amply supported by the testimony of school personnel and the testimony of the state detective regarding the appearance of mother's home. Further, even assuming that the records could undercut the testimony regarding B.A.'s lack of hygiene, the disposition order is supported by facts independent of the court's findings regarding B.A.'s appearance. The court's disposition decision for continued custody with DCF was based in large part on the "remarkable" improvements B.A. had made, not just in her personal appearance, but also in her study habits, attitude and behavior since being placed with her foster family. Significantly, the court found that B.A. had not had any further incidents of substance abuse or self-injury. Concurrently, the court found that mother demonstrated an inability to put her child's needs ahead of her own. Therefore, the court did not abuse its discretion in

concluding that continued custody with DCF was in B.A.'s best interests.

*Affirmed.*