VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     22-AP-252



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

APRIL TERM,   2023

In re J.B., Juvenile
(J.B., Father\* & K.B., Mother\*)

}
}
}
}
}
}

APPEALED FROM:

Superior Court, Windsor Unit,
Family Division
CASE NO. 107-9-19 Wrjv
Trial Judge: Heather J. Gray

In the above-entitled cause, the Clerk will enter:

Mother and father appeal a family division order terminating their parental rights to J.B., born in August 2019.  On appeal, mother argues that the evidence does not support the court's findings that mother's progress stagnated and that mother would be unable to resume parenting within a reasonable period of time.  Both parents argue that the court's delay in issuing an initial disposition order was error and deprived them of due process.  We affirm.

The family division made the following findings by clear and convincing evidence.  Prior to J.B.'s birth, the Department for Children and Families (DCF) worked with mother regarding mother's substance-abuse disorder and safety concerns for J.B.'s older sister.  In October 2018, mother relinquished her parental rights to J.B.'s older sister, and father's rights were terminated.  Father was incarcerated at the time, and the court's decision to terminate was based in part on his substance abuse and mental-health concerns.  After J.B. was born in September 2019, the State filed a petition alleging he was a child in need of care or supervision (CHINS).  J.B. was placed with the foster family who had adopted his older sister.  Mother stipulated to the merits of the CHINS petition, agreeing that J.B. was without proper parental care due to her undertreated substance-abuse disorder.  The initial disposition plan dated February 2020 had a goal of reunification and set out case-plan goals for mother and father.  Among other things, mother's goals included engaging in substance-use disorder treatment, maintaining sobriety for a minimum of four-to-six months, completing a mental-health assessment, and attending parent education.  Some of father's goals included following recommendations to address mental health and substance use, remaining sober, engaging with DCF, meeting with a domestic-violence specialist and following recommendations, controlling his temper, and obtaining safe and stable

housing. Because of J.B.'s asthma, both parents were required to follow the recommendations of J.B.'s pediatrician regarding exposure to passive cigarette smoke.

The proceedings were substantially delayed in this case in large part due to the COVID-19 pandemic. A disposition hearing that was initially scheduled for April 2020 was canceled and not rescheduled. Despite the delay, the February 2020 unadopted plan was provided to mother and father, who were offered services to assist in achieving the case-plan goals. A permanency case plan was created in September 2020 and adopted by the family division in November 2020. It retained a goal of reunification and amended the estimated date for achieving permanency as well as parents' goals. Mother's goals additionally included demonstrating an ability to put J.B.'s needs ahead of her own, signing releases, providing random drug screening, and keeping a household free of hazards, including drugs and related paraphernalia. In addition to the existing goals, father's goals included not using verbal aggression or intimidation, identifying the needs of being primary caretaker, and maintaining a source of income.

The family division issued a disposition order in March 2021, which continued legal custody with DCF. The disposition order contained the following note:

On March 30, 2021, the court accepted this plan as the disposition case plan that would have been accepted on April 6, 2020 if the hearing had not been cancelled (due to COVID). The parties and court all agree that this disposition case plan was later superseded by the permanency plan dated September 17, 2020 and approved, accepted, and adopted by the court on November 2, 2020.

Neither parent objected to the disposition order or appealed it.

In August 2021, DCF filed an amended permanency plan changing the permanency goal to adoption. The State subsequently filed a petition to terminate parental rights. Following a hearing, the family division concluded that there was a change of circumstances due to stagnation. The family division found that mother did not fully complete any of her case-plan goals and, although father completed seven of his twelve goals, significant goals remained unaddressed. Mother did not demonstrate sobriety, did not complete substance-abuse treatment, did not finish her parenting class, and failed to obtain a mental-health assessment and follow recommendations. Father did not demonstrate an ability to be the primary caregiver for J.B., did not take a parenting class, and failed to obtain safe and stable housing. Both parents did not address how they would comply with J.B.'s pediatrician's recommendation to provide J.B. with an environment free of passive smoke since they both continued to smoke three-to-four times a day. In addition, although parents consistently attended visits with J.B., they were unable to progress past supervised contact.

In evaluating J.B.'s best interests, the family division found the following. Parents both consistently attended visits but were unable to progress past supervised visitation. Parents have not acted as primary caregivers and are not aware of how to respond when J.B. is upset. J.B. has a strong attachment to his foster mother and biological sister and is well adjusted to his home, daycare, and medical providers. Parents do not have suitable, safe housing. Mother has a significant history of substance use and has not been able to demonstrate sobriety. Parents will

be unable to parent in a reasonable time given their lack of progress and J.B.'s immediate need for permanency. The family division concluded that termination was in J.B.'s best interests.

Both parents appeal. When the termination of parental rights is sought after initial disposition, the trial court must conduct a two-step analysis. In re B.W., 162 Vt. 287, 291 (1994). The court must first find that there has been a change in circumstances, and second "find that termination of parental rights is in the child's best interests." In re S.W., 2003 VT 90, ¶ 4, 176 Vt. 517 (mem.); see 33 V.S.A. § 5113(b). In assessing the child's best interests, the court is guided by the statutory criteria. 33 V.S.A. § 5114. The most important factor is whether the parent will be able to resume parenting duties within a reasonable time. In re J.B., 167 Vt. 637, 639 (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. In re A.F., 160 Vt. 175, 178 (1993).

On appeal, mother argues that the evidence does not support the court's finding that she did not complete any of the goals in the case plan and therefore the court's finding regarding stagnation is unsupported. A change of circumstances sufficient to modify an existing disposition order is often demonstrated through parental stagnation. In re S.W., 2003 VT 90, ¶ 4. "Stagnation may be shown by the passage of time with no improvement in parental capacity to care properly for the child." Id. (quotation omitted).

In evaluating whether there was a change of circumstances in this case, the family division found that mother failed to fully complete any of the goals in the case plan. Mother contends that the court ignored evidence that clearly demonstrated that she completed several goals, including maintaining sobriety for four-to-six months and obtaining a mental-health assessment. We uphold the family division's findings as long as there is credible evidence to support them. In re D.B., 2003 VT 81, ¶ 4, 175 Vt. 618 (mem.).

Mother claims that the evidence shows that she complied with the case-plan goal of maintaining sobriety for four-to-six months because she testified at the termination hearing in March 2022 that she had last used substances in November 2021. Notwithstanding mother's testimony, the court's finding that mother had not demonstrated sobriety was supported by other evidence indicating that mother was supposed to participate in testing but did not show up for urine screens and that DCF was unable to verify mother's sobriety. It was up to the family division to assess the credibility of mother's testimony, and the court was not required to accept the validity of mother's own statement in this regard. See In re A.F., 160 Vt. 175, 178 (1993) (providing that family court has discretion to determine witness's credibility and to weigh evidence). We will not reassess the credibility and weight of the evidence on appeal.

Mother likens her situation to that in In re T.M., 2016 VT 23, ¶ 19, 201 Vt. 358, where this Court concluded that the State failed to demonstrate that the father's progress had stagnated. In In re T.M., the father was engaged in substance-abuse treatment but continued to test positive for certain substances, including marijuana. This Court reversed a finding of stagnation, explaining that the outcome was "closely tied to the facts," which showed that the father participated in substance-abuse treatment, abstained from illicit drugs, and demonstrated progress on other goals, and that the State failed to explain the meaning of the drug reports or connect the marijuana use with lack of compliance with the case plan. Id. ¶ 23. In contrast, here, mother's opiate addiction led to DCF's intervention, her treatment for that addiction was central

3

to the case plan, mother did not successfully engage in treatment, and mother failed to participate in testing. Under these circumstances, the court was within its discretion to find that mother had not demonstrated sobriety.

Mother also asserts that the court's findings related to the mental-health assessment were unsupported by the evidence. The case-plan goal at issue directed mother to complete a mental-health assessment, follow the recommendations, and sign releases so that DCF could contact her therapist. In its findings, the court made three statements related to this goal. The court stated: mother had not achieved any of her case-plan goals, mother had not fully completed any of her case-plan goals, and mother had not had a mental-health assessment. At the termination hearing, the DCF caseworker testified that mother had not signed releases or produced a mental-health assessment, so DCF was unable to confirm whether mother complied with the recommendations regarding her mental health. Mother contends that this testimony plainly indicates that DCF agreed she had completed an assessment because there could be no recommendations without an assessment. The DCF caseworker's testimony supports the first of the two findings challenged by mother because it demonstrates that mother had not followed recommendations or provided releases to DCF. Even assuming that mother did complete an assessment and that the final challenged statement was not entirely supported, any error was harmless. The main point of the court's findings was that mother had failed to make progress toward addressing the issues identified in the case plan, including her mental health. Obtaining an assessment without making progress on the recommendations and failing to disclose the assessment supports the court's finding that mother's progress had stagnated.

Mother next argues that the record does not support the court's finding that mother could not assume parental duties in a reasonable time. Mother claims that at no point did the State demonstrate that her addiction placed J.B. at risk of harm or impacted her ability to safely parent and that she could have resumed parenting at any point if there was a safety plan to address her substance-use disorder. Mother's arguments challenge the validity of the CHINS merits decision and are foreclosed at this point in the proceeding.* Mother stipulated that J.B. was a CHINS for lack of proper parental care due to her undertreated substance use. The CHINS merits decision and resulting disposition is now final and cannot be collaterally attacked in this appeal from a subsequent disposition order. See In re C.B., 2020 VT 80, ¶ 38, 213 Vt. 215 (providing that merits decision became final after initial disposition and could not be collaterally challenged in appeal from subsequent disposition order). To the extent mother is now arguing that DCF should have engaged in family-safety planning during the course of the juvenile proceedings in the family division, this argument was not raised below and is therefore not preserved for appeal. In re B.A., 2014 VT 76, ¶ 15, 197 Vt. 169. In sum, mother has a long history of substance-use disorder, has not completed treatment or demonstrated consistent sobriety, does not have safe and suitable housing, and does not fully understand J.B.'s needs. J.B. has been in custody since

---

* In her reply brief, mother claims that she is not attempting to attack the CHINS merits decision or the initial disposition decision, but is focused on "the court's procedure throughout the case." Mother argues that her action of consuming drugs while pregnant was insufficient to demonstrate that she placed J.B. at risk of harm or that she could not adequately parent. She also asserts that father should have been required to stipulate to the merits decision. Contrary to mother's assertion, her arguments can be construed in no other way than as an attempt to undo the now-final merits adjudication.

4

he was four days old and requires permanency. Contrary to mother's assertions, these findings adequately support the court's determination that mother would not be able to assume parental duties within a reasonable time.

Finally, parents both argue that the initial disposition was delayed far beyond the time requirements provided in the CHINS statute and parents were prejudiced and deprived of due process because of the delay. Parents point out several alleged shortcomings with the procedure of this case between when the CHINS petition was filed in September 2019 and when the first disposition order was issued in March 2021. This delay is obviously far beyond the statutory timeline, which requires a disposition hearing to be held within thirty-five days of a merits adjudication. 33 V.S.A. § 5317(a).

Parents' arguments are essentially an attempt to invalidate the March 2021 disposition order. As explained above, this is an impermissible collateral attack on a final judgment. A disposition order is a final, appealable judgment. See id. § 5318(d) (providing that disposition order is final judgment). Once a disposition becomes final, it cannot be collaterally attacked "absent a demonstration that it is void due to lack of jurisdiction or because it was entered in a manner inconsistent with due process of law." In re C.B., 2020 VT 80, ¶ 38. Parents did not appeal or otherwise challenge the March 2021 order, and their arguments on appeal regarding delay do not provide a basis for a collateral attack. The time limits in the statutes are "directory and not jurisdictional" and the delay by itself does not amount to a denial of due process. In re M.B., 158 Vt. 63, 67 (1992) (quotation omitted) (rejecting claim that delay in adjudicating CHINS proceeding amounted to denial of due process). The record reflects that due process was satisfied in that parents were notified of the proceedings and had a meaningful opportunity to be heard. See In re C.L.S., 2020 VT 1, ¶ 25, 211 Vt. 344 (explaining that due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner" (quotation omitted)). Therefore, we conclude that there is no basis to disturb the now-final March 2021 disposition order.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

Harold E. Eaton, Jr., Associate Justice

William D. Cohen, Associate Justice

5