VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      23-AP-405

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

MAY TERM,   2024

In re: H.B & C.B., Juveniles
(C.B., Father*)

}
}
}
}
}
}

APPEALED FROM:

Superior Court, Orleans Unit,
Family Division
CASE NOS. 21-JV-00799; 21-JV-00800
Trial Judge: Rory T. Thibault

In the above-entitled cause, the Clerk will enter:

Father appeals from the trial court's termination of his residual parental rights in H.B. and C.B., born in July 2018 and May 2020 respectively. Father does not challenge any of the court's findings or conclusions as to the merits of the termination decision. He instead contends that he did not receive proper notice of the termination hearing and that the court should have taken a different approach to parent-child contact (PCC). Father raises both arguments for the first time on appeal. We affirm.

The Department for Children and Families (DCF) became involved with this family in 2021. It investigated medical neglect of C.B., parents' alleged drug use and use of substances in the children's presence, and their failure to adequately supervise the children. DCF developed a safety plan. In June 2021, the State filed petitions alleging that the children were without proper parental care based on continued reports of inadequate supervision, concerns about domestic violence, missed medical appointments for the children, and parents' insufficient engagement with substance abuse treatment. Parents stipulated that the children were in need of care or supervision. The children were placed with maternal grandmother pursuant to a conditional custody order. In October 2021, the court adopted a disposition case plan with a goal of reunification with parents. In February 2023, the State moved to terminate parents' residual rights. Following a November 2023 hearing, which neither parent attended, the court granted the State's request.

The court made numerous findings, including the following. Parents were briefly engaged in services when the children were first placed in DCF custody. Between late October

2021 through mid-April 2022, however, parents missed appointments and a court hearing, and they did not respond to messages from the DCF caseworker. Once parents reinitiated contact, issues remained regarding their substance use. Around this time, mother obtained an emergency relief-from-abuse order against father, alleging physical injury and a pattern of abuse dating back years. The order lapsed when mother failed to appear for the final hearing.

A drug test in May 2022 confirmed that both parents were actively using substances, including cocaine and fentanyl. The DCF case worker recorded multiple notes about criminal conduct, arrest warrants, and more than a month passing without any contact from parents. Between September and December 2022, parents had a brief period of sobriety and engagement with services. Given the extended period of no contact, a plan was put in place to reintroduce children to parents, beginning with videorecorded messages and progressing to virtual visits. According to maternal grandmother, the children exhibited negative behaviors once the videos started, particularly H.B. Mother missed approximately half of the virtual visits. She had no visits with the children of any kind after mid-August 2023 and she stopped contacting the DCF caseworker. Father similarly had a sporadic record of visitation. As of the termination hearing, he had no recent contact with the children and had made no efforts to facilitate contact; he was not in contact with the DCF caseworker. DCF continued virtual visitation after the termination petitions were filed. There was no evidence that parents changed their behaviors, however, and as of the termination hearing, there was no reported progress on any case plan goals from November 2022 to the present.

Based on these and other findings, the court concluded that parents had stagnated in their ability to parent and that termination of their rights was in the children's best interests. It explained that parents had disengaged from the children's lives and only sporadically attended visitation. The extended period of minimal contact during critical developmental stages for the children led to a slow re-initiation of contact by recorded video and later live video. This contact was nonetheless traumatic for H.B. and required therapeutic intervention. Neither parent consistently attended virtual visits and parents made no progress toward increased contact or in-person interaction. There was no evidence that parents made any inquiry as to the children's welfare after August 2023. Parents had no meaningful relationship with the children. Parents also failed to demonstrate sobriety or obtain adequate and safe housing for the children. The court found that parents clearly failed to meet the expectations in the case plan.

The court concluded that all of the best-interest factors supported termination of parents' rights. Parents played a minimal, and later nonexistent, role in the children's lives. Much of the children's lives had been spent outside parents' custody. Parents offered no emotional support or any degree of care to the children and there was no evidence that this would change. Parents were not presently capable of parenting the children and they were not presently willing to attempt to do so. The court concluded that they could not parent the children within a reasonable time as measured from the children's perspective. The children were doing well with their grandmother and were increasingly engaged with another family in a pre-adoptive setting. The children's needs were being met and they were in a stable and loving environment. For these and other reasons, the court concluded that termination of parents' rights was in the children's best interests. This appeal by father followed.

Father argues that he was not properly served with notice of the termination hearing.[*] He contends that when the mailed hearing notice was returned to sender, the court was obligated, as a matter of due process, to make "some attempt to mail the notice to the correct address." Father did not raise this argument below.

"Generally, in juvenile proceedings, as for other civil cases, unpreserved issues that are not raised at trial are waived on appeal." In re B.A., 2014 VT 76, ¶ 15, 197 Vt. 169 (citing cases). "Nonetheless, this Court can consider unpreserved errors in exceptional cases where the error is so obvious, grave, and serious as to warrant reversal." Id. (quotation omitted). Father makes no showing that the alleged error "amount[s] to a fundamental miscarriage of justice warranting reversal" here. Id. ¶ 16 (quotation omitted).

The rules require that notice of the termination hearing "be served by the court directly upon the parents by first-class mail in accordance with Rule 5(b)(2) of the Vermont Rules of Civil Procedure unless otherwise ordered." V.R.F.P. 3(a)(3)(A); see also In re M.T., 2006 VT 114, ¶ 11, 180 Vt. 643 (mem.) (holding that court must send parents "direct notice . . . of a pending petition and scheduled hearing concerning the termination of their parental rights"). Under Vermont Rule of Civil Procedure 5(b)(1)(C), "[s]ervice by mail or by commercial carrier is complete upon mailing or delivery to the carrier." See also Reporter's Notes—2006 Amendment, V.R.C.P. 5 (similarly explaining that each method of service provided for in Rule 5(b) "is complete upon entrustment of the paper being served to the means of transmission—the postal service or carrier, or the 'send' button of the electronic device"). The court's notice obligation is satisfied when the court mails notice to a parent's last known address, even if it is returned due to the parent's failure to update his or her address. See In re J.L., 2007 VT 32, ¶ 13, 181 Vt. 615 (mem.) (holding that it was parent's "failure to update the court as to his change of address that resulted in the failure of the notice to reach him"). Father had the burden of notifying the court if his address changed. 33 V.S.A. § 5311(f).

In this case, the record shows that the court sought to clarify parents' mailing address at a June 2021 hearing. Mother recited the parties' physical address but stated that "we don't receive our mail here. We have a post office box in Derby." Mother then provided the court with the P.O. Box number as parents' mailing address without objection from father. Father further testified that he and mother were "together all the time." The court mailed notice to father at the address provided, which satisfied its notice obligation. While father advocates a different approach for the first time on appeal, the process below was consistent with Civil Rule 5 and our case law, and there was no "obvious, grave, and serious" error here.

Father's remaining argument is equally without merit. Father argues that he was deprived of meaningful PCC through the actions of others. According to father, the trial court improperly delegated decisions about whether to increase PCC to DCF.

Again, father failed to raise this argument below. He did not object to the court's PCC orders or seek to amend them; he did not appeal from the disposition order. The record shows that father failed to take advantage of the visitation that was offered to him and failed to make

___

[*] Father repeatedly refers to "parents" in the arguments in his brief. We do not address any arguments with respect to mother as she did not appeal.

3

progress from video visitation to in-person visitation. At the time parents filed a motion seeking increased visitation, they had not been in contact with the DCF caseworker. The court reasonably determined that this was a necessary first step, particularly given the caseworker's lack of contact information for parents, her concerns about father's potential engagement in criminal activity, her inability to obtain releases concerning substance use, and the children's negative reactions to the weekly visitation that was occurring. As of the termination hearing, father had no recent contact with the children and had made no efforts to facilitate contact; he was not in contact with the DCF caseworker. Father is responsible for his lack of engagement with the children and he fails to show any "obvious, grave, and serious" error that would warrant reversal.

Affirmed.

BY THE COURT:

Harold E. Eaton, Jr., Associate Justice

Karen R. Carroll, Associate Justice

William D. Cohen, Associate Justice

4